Opinion of
the Court.
ON the 4th of March 1802, Henry Pawling exhibited his bill against James Speed and the heirs and devisees of William Pawling, to compel them to convey to him 600 acres of land, for which James Speed had passed his obligation to said Henry, bearing date on the 23d of May 1786. The material allegations in the bill are, that in the year 1789, the complainant was about to go from Kentucky to Richmond, and was persuaded by his wife, to make some provision for his half brother, William; that he made an assignment on Speed’s bond, and put it into his desk, intending the assignment should operate as a gift to said William Pawling, in case the complainant died before he returned; that after his return from Richmond, he permitted said William to live upon the land, before the complainant discovered the bond had been taken out of his possession, intending only to let the said William have the use of the land, but never had promised to give it to him; that he did not then believe the land would be held by Speed’s title; that, after some time, he found out that the said bond had been clandestinely taken out of his possession, as he believes, by the said William Pawling; that he was much displeased with William, and repeatedly told him he would not give him the land; that said William departed this life in the year 1797, leaving a widow and children, who are made defendants; that during the pendecy of a suit between *78 Speed and Wilson, respecting the land, Speed executed a deed to said widow and children, for about 444 acres of land, and obtained possession of the bond, notwithstanding the said Speed had been forbidden to make a deed, and had full notice of the manner in which said William came by the possession of the bond, and of the manner and purpose for which he, the complainant, made the assignment; that there is due to the said Speed, of the purchase money, about the sum of —, and the rest of the purchase money, to wit, the sum of —, has been paid by him; that during the pendency of the suit between Speed and Wilson, the said complainant agreed with William Buford, who had purchased Wilson’s claim, to let him have Speed’s claim, in case it should prove better than Wilson’s; and since the decision of the suit between Speed and Wilson, the complainant has actually sold to said Buford, who holds possession; but that Speed, by virtue of a decree in the suit of Speed against Wilson, threatens to dispossess Buford, &c.
The answer denies that William Pawling obtained the bond clandestinely, and insists that he was a bona fide purchaser thereof, and paid a valuable consideration. Speed insists, that Henry Pawling had only paid £190 of the consideration; that William Pawling had the bond, and paid, in September 1788, the sum of £7, and afterwards made two other payments, amounting in the whole to upwards of £30; that the complainant had previously told said Speed, that William Pawling was to pay the balance of the purchase money, the original purchase being at ten shillings per acre; that the widow of William Pawling, having the bond, but being unable to pay the balance of the purchase money, agreed to accept a deed for so much land as had been paid for; that a deed was accordingly executed for 445 acres, and the bond surrendered. He admits that after William Pawling became insane, in June 1797, the complainant desired that the land might not be conveyed to said William; but expressly denies that he ever understood that the complainant charged said William with getting the possession of the bond clandestinely, until long after the defendant, Speed, had executed the deed to the widow and children.
Upon hearing the bill, answer, depositions and exhibits, the circuit court of Lincoln dismissed the bill; from which decree the complainant appealed.
*79 The important question is, did William Pawling obtain the bond clandestinely, and keep it against the consent of Henry Pawling? That is the ground upon which the complainant has founded his claim, and it was incumbent on him to make it out by evidence. For if he voluntarily gave the bond to William Pawling, and executed the gift, by assigning the bond, and delivered it, or assenting to the delivery, it is as much beyond the power of the court, as between the present parties, to set aside the gift, as it would be in case of a sale and transfer upon valuable consideration, as insisted upon by the defendants in their answers. To support the statement made in the bill, John Shepherd is the important witness; and he swears to the acknowledgment of William Pawling, as having been made to the said deponent; that is to say, that William Pawling acknowledged he had heard of Henry Pawling’s will, in which nothing was left to him, the said William, and also of the assignment of Speed’s bond; and that he, William, went to said Henry Pawling’s desk, and found the will aforesaid, and the bond on Speed, which bond he said he took out of said desk, and had kept it to that day, which was about the year 1794 or 1795. But, independent of a combination of circumstances, and of the direct attack upon the character of this witness, his credibility is greatly weakened by the omission to disclose this most important part of his testimony in two former depositions given by him in the cause. This same witness, however, discloses, in a former deposition, this strong circumstance, that in the year 1787, William Pawling came to Kentucky, and lived in the house of Henry Pawling, the complainant; and that, soon afterwards, the said William and Henry talked about bargaining for the land which said Henry had purchased of James Speed.
On the part of the defendants, these important facts are clearly established: That the complainant acknowledged to divers persons, that he had sold the land in question to his brother William, and to some, that William had paid him for it; that, as far back as the year 1790, William Pawling was in possession of the land, living on it and improving it, until he lost his senses in 1797; and even after he moved off, the land was rented out for his benefit. The possession of the said William continued long after the complainant *80 knew that he (William) had possession of the bond of Speed, with the assignment endorsed. This assignment (acknowledged by the bill) bears date about two years previous to the existence of the events and circumstances stated by the complainant as inducing the assignment. The reason assigned for permitting William Pawling in his lifetime, and his representatives since his death, to retain possession of the bond, without demand made or suit brought, until upwards of fourteen years after the assignment bears date, is very unsatisfactory. The pendency of the suit between Speed and Wilson, and the belief that Speed’s claim would prove the weaker, is no excuse for permitting William Pawling to hold the bond on Speed, until the action of detinue would have been barred by the statute. If Speed prevailed against Wilson, the bond on Speed was necessary to the complainant, as his evidence of his claim against Speed for the price of ten shillings per acre, with interest, to be refunded by Speed. The suit between Speed and Wilson was no impediment against any proceedings which Henry Pawling might have otherwise used against William, to compel him to deliver up the bond on Speed. But if we are to understand Henry Pawling as meaning that there is a vast inequality between the sum which Speed would have been bound to refund, and the value of the land, enhanced even beyond the ordinary value of lands in the vicinity, by the establishment of the seat of justice of Garrard county, in the year 1797, upon the land in controversy ; that, for the former, he did not mean to deny the validity of the assignment; but that he had never assented to the assignment of the latter to his brother William, and was therefore waiting the event of the suit between Speed and Wilson, to determine whether he would make claim upon William for Speed’s bond, then, indeed, it would appear from the exhibits and depositions, that Henry Pawling has furnished the true key to unlock the wicket of his secret intentions. But these intentions were formed too late, or not signified until Henry Pawling had no right to modify the assignment, without the concurrence of William or his representatives. The depositions of Jonathan Forbes, Elizabeth Gilmore, Matty Leiper, Jennett Wilson, John Wallace and Henry Speed, united with the assignment of Speed’s bond to the said William Pawling, are satis *81 factory evidences of a sale from Henry to William Pawling, of the land in controversy; and, therefore, the circuit court did right in dismissing the bill with costs.—Decree affirmed.